EXHIBIT A

FILED
PM 3: 54

# UNITED STATES DISTRICT COURT
for the
Middle District of Tennessee

| | |
|---|---|
| Karen DeMoor | )|
| *Plaintiff/Petitioner* | ) |
| v. | ) Civil Action No. |
| Freeman Webb Company, Realors; Et All | ) |
| *Defendant/Respondent* | ) |

**APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS**
(Long Form)

**Affidavit in Support of the Application**

I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested. I declare under penalty of perjury that the information below is true and understand that a false statement may result in a dismissal of my claims.

Signed: *Karen DeMoor*    Date: 9-13-2024

**Instructions**

Complete all questions in this application and then sign it. Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number.

1. For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.

| Income source | Average monthly income amount during the past 12 months | | Income amount expected next month | |
|---|---|---|---|---|
| | You | Spouse | You | Spouse |
| Employment | $ | $ | $ | $ |
| Self-employment | $ | $ | $ | $ |
| Income from real property *(such as rental income)* | $ | $ | $ | $ |
| Interest and dividends | $ | $ | $ | $ |
| Gifts | $ | $ | $ | $ |
| Alimony | $ | $ | $ | $ |
| Child support | $ | $ | $ | $ |

AO 239  (Rev. 01/15) Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form)

| | | | | |
|---|---|---|---|---|
| Retirement *(such as social security, pensions, annuities, insurance)* | $ | $ | $ | $ |
| Disability *(such as social security, insurance payments)* | $ 1,440.00 | $ | $ 1,440.00 | $ |
| Unemployment payments | $ | $ | $ | $ |
| Public-assistance *(such as welfare)* | $ | $ | $ | $ |
| Other *(specify)*: | $ | $ | $ | $ |
| Total monthly income: | $ 1,440.00 | $ 0.00 | $ 1,440.00 | $ 0.00 |

2. List your employment history for the past two years, most recent employer first. *(Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |

3. List your spouse's employment history for the past two years, most recent employer first. *(Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

4. How much cash do you and your spouse have? $ __0.00__

Below, state any money you or your spouse have in bank accounts or in any other financial institution.

| Financial institution | Type of account | Amount you have | Amount your spouse has |
|---|---|---|---|
| First Federal Credit Union | Checking/Savings | $ 5.00 | $ |
| Wilson Bank | Checking | $ 70.00 | $ |
| | | $ | $ |

If you are a prisoner, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts.  If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.

5. List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishings.

| Assets owned by you or your spouse | |
|---|---|
| Home *(Value)* | $ |
| Other real estate *(Value)* | $ |
| Motor vehicle #1 *(Value)* | $ 4,500.00 |
| Make and year: 1986 Chevrolet | *(Note: I owe ~ $8600 from past loan)* |
| Model: Corvette | |
| Registration #: VETTSYB | |
| Motor vehicle #2 *(Value)* | $ 2,000.00 |
| Make and year: 2006 Chevrolet | |
| Model: Cobalt | |
| Registration #: 673209D | |
| Other assets *(Value)* | $ |
| Other assets *(Value)* | $ |

6. State every person, business, or organization owing you or your spouse money, and the amount owed.

| Person owing you or your spouse money | Amount owed to you | Amount owed to your spouse |
|---|---|---|
| N/A | $ | $ |
| | $ | $ |
| | $ | $ |

7. State the persons who rely on you or your spouse for support.

| Name (or, if under 18, initials only) | Relationship | Age |
|---|---|---|
| N/A | | |
| | | |
| | | |

8. Estimate the average monthly expenses of you and your family. Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.

| | You | Your spouse |
|---|---|---|
| Rent or home-mortgage payment *(including lot rented for mobile home)* <br> Are real estate taxes included? ☐ Yes ☒ No <br> Is property insurance included? ☐ Yes ☒ No | $ 472.00 | $ |
| Utilities *(electricity, heating fuel, water, sewer, and telephone)* | $ 60.00 | $ |
| Home maintenance *(repairs and upkeep)* | $ | $ |
| Food | $ 200.00 | $ |
| Clothing | $ | $ |
| Laundry and dry-cleaning | $ | $ |
| Medical and dental expenses | $ | $ |
| Transportation *(not including motor vehicle payments)* | $ 80.00 | $ |
| Recreation, entertainment, newspapers, magazines, etc. | $ | $ |
| Insurance *(not deducted from wages or included in mortgage payments)* | | |
|     Homeowner's or renter's: | $ | $ |
|     Life: | $ | $ |
|     Health: | $ | $ |
|     Motor vehicle: | $ 135.00 | $ |
|     Other: | $ | $ |
| Taxes *(not deducted from wages or included in mortgage payments) (specify):* | $ | $ |
| Installment payments | | |
|     Motor vehicle: | $ | $ |
|     Credit card *(name)*: | $ | $ |
|     Department store *(name)*: | $ | $ |
|     Other:     Storage Units | $ 380.00 | $ |
| Alimony, maintenance, and support paid to others | $ | $ |

| | | |
|---|---|---|
| Regular expenses for operation of business, profession, or farm *(attach detailed statement)* | $ | $ |
| Other *(specify)*: | $ | $ |
| **Total monthly expenses:** | $ 1,327.00 | $ 0.00 |

9. Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?

   ☐ Yes    ☑ No    If yes, describe on an attached sheet.

10. Have you spent — or will you be spending — any money for expenses or attorney fees in conjunction with this lawsuit?    ☐ Yes    ☑ No

    If yes, how much?    $ _____

11. Provide any other information that will help explain why you cannot pay the costs of these proceedings.
    I am on Social Security Disability, SSDI, and have limited income, and do not have the means to pay fees or costs for proceeding in court on my own.

12. Identify the city and state of your legal residence.
    Lebanon, TN

    Your daytime phone number:    (629) 999-9142

    Your age:    59    Your years of schooling:    16


EXHIBIT B

# Fw: HUD Fair Housing Complaint - Karen Demoor (TN HRC)

FILED
2024 SEP 13 PM 3:55
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

From: Karen DeMoor (cowgirl302@aol.com)
To: cowgirl302@aol.com
Date: Friday, September 13, 2024 at 01:06 PM CDT

**From:** Complaints Office 04 <complaintsoffice04@hud.gov>
**To:** cowgirl302@aol.com <cowgirl302@aol.com>
**Sent:** Thursday, January 19, 2023 at 10:18:54 AM CST
**Subject:** HUD Fair Housing Complaint - Karen Demoor (TN HRC)

Dear Karen Demoor,

**Please do not reply to this email.**

This is to acknowledge receipt of the complaint. The complaint has been referred to the following agency for assessment and possible investigation:

**Tennessee Human Rights Commission**

312 Rosa L. Parks Avenue

23rd Floor

Nashville, TN 37243-1102

PH: (615) 741-5825

Please follow up with the agency above for any questions regarding the status of the claim.

Sincerely,

U.S. Department of Housing and Urban Development

Region IV Office of Fair Housing and Equal Opportunity

Five Points Plaza

40 Marietta Street, 16th Floor

Atlanta, GA 30303-2806

Complainant Name: karen demoor

Complainant Address: 226 E. Gay St.

lebanon, TN 37087

Complainant Email: cowgirl302@aol.com

Complainant Phone: 6299999142

Best Time to Call Complainant: Evening

Respondent Name: brook gipson

Respondent Organization: freeman webb properties

Respondent Address: 1640 w. main st.

lebanon, TN 37087

Respondent Phone:

Respondent Email:

Complainant Contact Name: john demoor

Complainant Contact Phone: 6154991954

Complainant Contact Email:

Relationship:

What Happened:

On March 31 2022 my first floor townhome living room window fell inward crashed to the floor and shattered. It was a windy day and I noticed afterward the slides were broken. I immediately left a voicemail with emergency maintenance and emailed the complex office manager Brook Gipson and I also took photos of the broken window lying on the living room floor. Over the next 6 months I continued to email my office manager. She would periodically email me about potential progress to get a new window for me. About in the month of June or July I had a break in attempt via the window that only had a cardboard insert which a neighbor witnessed and phoned the police. I notified the office once again but to no avail and no urgent action from management. In July 2022 I had to call the fire department because a smoke alarm was going off in my town home. When fire personnel showed up they found a burnt and frayed wire upstairs photo taken and told me to keep it disconnected and to call complex maintenance to repair. Complex maintenance showed up and reconnected this smoke detector and left. Not feeling confident in this action I disconnected the smoke detector because of what the fire personnel had told me. Fast forward to approximately September 15th. Lebanon Housing Codes reached out to me after I left them a message. I had filed a complaint but apparently it was not seen and they came out right away within 45 minutes. They confirmed and found not only the cardboard insert of the first floor living room broken window but found out three of the five smoke detectors were inoperable. They gave the office manager 30 days to start repair and within 24 hours and I magically received a new living room window and five brand new smoke detectors. Also tenants have a 5 day grace period to pay rent at the beginning of the month. I paid my rent on August 5th and placed my money orders in the office out box which I had done before. Because the office manager did not report or add my payment to the rent ledger the Property Management Group out of Nashville contacted their attorney who wrote me a letter and followed it up with a detainer warrant for late rent. I did owe a small amount in addition to August rent but not enough to instigate a detainer warrant. We went to court on September 8th and only one day prior on the 7th did the attorney write a letter that said he was in possession of my August 5th rent money orders. While in court on September 8th the office manager gleefully exclaimed that she had my money orders in her folder that were dated August 5th. I fought the eviction process in court until December. After going in front of the Judge in General Session several times at one point he said to me that he strongly recommended that I move this to civil court based on discrimination. I did not and do not have the money to fight this on my own but it felt good to have a judge on my side. After there were no more avenues to fight this on my own in court I had to move out on December 2nd. The office manager was there on my front lawn along with the sheriff and I politely asked the office manager to leave the property until I had finished moving out which she declined. I looked at the sheriff and said will you be my witness in court that I politely asked her to leave

and she did not and he nodded that yes he would. To add insult to injury the office manager and her assistant manager apparently have confronted and intimidated a few of my friends who happen to live at this complex to say they cannot be in contact with me or they will be in a lot of trouble. They claim I am banned from the property. My only so called crime is being a little bit behind on rent. The fairly new office manager is 21. I am 58 on Social Security disability other people got their windows replaced in 2 to 3 weeks another neighbor on disability was evicted and she is not banned. I am totally targeted and have been discriminated against.

Why Did it Happen:

Other neighbors received a new window within two to three weeks and it took 6 months after housing codes were called for the complex to fix mine. they claim I am now banned from the property yet others who have been evicted for non-payment of rent are not banned for the property. Also this property receives federal tax credits for low income, they also were required from the HUD interim rule to give me a list of federal rent relief resources which they did not do before proceeding to the eviction process.

Race?:

Color?:

Religion?:

National Origin?:

Disability?:

Sex?:

Familial Status?:

Retaliation?:

Other reason?:

Other Members/People?:

Violation Location:

Violation Address:1601 Greentree Pointe Circle

lebanon, TN

Violation Date:11/11/0007

Violation Continuing?:Yes

EXHIBIT C

JEANETTE STEVENS
HUMAN RIGHTS COMMISSION
7175 STRAW PLAINS PIKE, STE 100
KNOXVILLE TN 37914-7000

**USPS CERTIFIED MAIL**



9414 8098 9864 3065 1923 27



PITNEY BOWES
$8.44 0
US POSTAGE IMI
FIRST-CLASS
028W0002310186
2000414416
ZIP 37914
AUG 09 2024

KAREN DEMOOR
415 ROME PIKE, APT 5101
LEBANON TN 37087-8032

Shipper Ref - DNC 23-125



**TENNESSEE HUMAN RIGHTS COMMISSION**
WILLIAM R. SNODGRASS TENNESSEE TOWER
312 ROSA L. PARKS AVENUE, 23RD FLOOR
NASHVILLE, TN. 37243-1102
TOLL FREE: 800-251-3589
www.tn.gov/humanrights

Karen Demoor                                                                                   **COMPLAINANT**
415 Rome Pike #5101
Lebanon, TN 37087


vs.

Freeman Webb Company, Realtors      Judith Beasley                          **RESPONDENTS**
3810 Bedford Ave, Suite 300         3810 Bedford Ave, Suite 300
Nashville, TN 37215                 Nashville, TN 37215
                                    Respondents' Representative

Brook Gipson
3810 Bedford Ave, Suite 300
Nashville, TN 37215

Bret Harris
3810 Bedford Ave, Suite 300
Nashville, TN 37215

**THRC #23-125    HUD# 04-24-5706-8**

**NOTICE OF DETERMINATION**

This letter serves as official notice to all parties that the Commission has concluded its investigation and has reached the following determination: Examination of the evidence indicates that there is no reasonable cause to believe that the Respondents have engaged in a discriminatory practice. Therefore, the complaint in this matter is dismissed.

If the Complainant wishes to pursue this matter further, they can:

1. File a written request for reconsideration via mail: THRC, 312 Rosa L. Parks Avenue, 23rd Floor, Nashville, TN 37243-1102; or via e-mail: ask.thrc@tn.gov; or via facsimile: (615) 253-1886. The request must specifically state the grounds on which it is based and be filed within thirty (30) days of the receipt of this notice; OR

2. File a private action in the state court system, Chancery or Circuit Court within thirty (30) days of the receipt of this notice, appealing the determination; OR

3. If a federal law was involved, then you may file a private action in federal court. You have two (2) years from the time of the alleged discriminatory practice to file a federal claim. This two (2) year period does not include any time during which there was an administrative proceeding by a federal agency.

On Behalf of the Commission,

08/09/2024
Date

*Muriel M. Nolen* (signature)
_____
Muriel M. Nolen, Executive Director

# Determination of No Reasonable Cause

Case Name: Karen Demoor v. Freeman Webb Company, Realtors, Brook Gipson, and Bret Harris

Case Number: THRC# 23-125    HUD# 04-24-5706-8

I. JURISDICTION

Complainant Karen Demoor alleged she has been harmed by discriminatory actions taken by the Respondents Freeman Webb Company, Realtors, Brook Gipson, and Bret Harris in violation of the Fair Housing Act and the Tennessee Human Rights Act ("the Acts"). Complainant alleged the Respondents applied different terms and conditions due to her disability, evicted her from the property due to her disability, and retaliated against her due to her involvement in a protected activity.

The most recent act is alleged to have occurred on January 22, 2023, and the complaint was timely filed on January 23, 2023. Complainant rented a unit located at 1601 Greentree Pointe Circle, Lebanon, Tennessee 37087. The subject property is owned by Respondent Lebanon Housing Authority, managed by Respondent Freeman Webb Company, Realtors through Respondents Brook Gipson, Property Manager, and Bret Harris, Regional Vice President.

The subject property is a multi-family property and is not exempt under the Fair Housing Act (sections 803 and 807) or the Tennessee Human Rights Act (section 4-21-602). If proven, the allegations would constitute a violation of Sections 804(f)(1)-(2) and 818 of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988 and a violation of the Tennessee Human Rights Sections 4-21-601(a)(1)-(2), 4-21-601(b)(1)(A)-(B), and 4-21-601(d).

The Respondents do not receive federal funding.

II. COMPLAINANTS' ALLEGATIONS

The following is a summary of the Complainant's allegations: On March 31, 2022, her living room window fell inward and crashed to the floor. She reported this immediately to Respondent Gipson. Over the next 6 months, she continued to email the office about replacement, but the window was never replaced.

On August 5, 2022, she put a money order in their drop box for rent. On August 9, 2022, she received a letter from their attorney stating they had not received her rent. On August 11, 2022, a detainer warrant was filed against her. Court was set for September 8, 2022, and on the day before court, their attorney admitted they had received her rent payment.

Complainant contacted codes; codes inspected her unit on September 15, 2022. Respondents were given 30 days to replace the window and replace faulty smoke detectors in her unit and within 24 hours she had a new window and five new smoke detectors.

She fought the eviction in court until she had to leave the property on December 2, 2022. On or around January 23, 2023, some of the residents informed her she was banned from the property. Other residents evicted from the property were not banned from the property. She believed this was done in retaliation for putting Respondents on notice via email that she contacted HUD about filing a complaint against the property.

Complainant believed Respondents applied different terms and conditions due to her disability and retaliated against her when they banned her from the property due to her involvement in a protected activity in violation of the Acts.

III. RESPONDENTS' DEFENSES

Respondents deny the accusations and assert the following: they became aware of the broken window in March 2022, but had issues with suppliers providing the window and labor. The admit the window took longer than planned to install. They were never aware of any break in attempt. The maintenance supervisor determined that the smoke detector batteries in the unit were dead and changed them after the Complainant called the fire department. They were not aware of any further issues until codes was called, and they then replaced all the detectors.

The Complainant was evicted due to being behind on rent. They gave her two months to pay before filing the eviction in court. They received partial payment, but they do not accept payment after the case has been turned over to the attorney. The attorney notified the Complainant that the payment would not be processed until after court. The Complainant was banned from the property not due to filing a complaint with HUD, but because she had been sleeping in her car on the property after her eviction and creating a disturbance to tenants.

IV. FACTS AND ANALYSIS

The Complainant provided a copy of her Social Security Disability Income. A copy of the Complainant's lease dated February 20, 2020, was provided. Documentation provided by Respondents shows that eviction was filed on August 5, 2022, with Complainant's ledger showing a balance of $3,037.60 at the time eviction was filed. A document provided by Respondents and Complainant from the Law Office of Hall and Associates dated August 9, 2022, state the Complainant's past due balance, and that the balance must be paid in full within thirty (30) days for tenancy to be reinstated. A document provided by Respondents from the Law Office of Hall and Associates dated September 7, 2022, stated that the office had received the Complainant's August 5, 2022, payments, and that were being held due to the ongoing eviction. A list of evictions for the property in 2022 was provided. Thirty-seven (37) tenants were sent for eviction in 2022. Amounts owed at the time of eviction range from $1,286.00 to $6,669.25.

Respondents provided email correspondence with the Complainant regarding window replacement, as well as quotes and conversations with contractors. An email from the

Complainant to Respondents dated March 31, 2022, states her window fell inward and broke. Quotes from different companies dated April 5, 2022, August 31, 2022, and September 15, 2022, were provided. Respondents state in an interview that the installation took longer than anticipated due to supply chain issues and the need for the window to be custom-made. Respondents state that a company came to replace the window on August 15, 2022, but the Complainant was not home at the time and her dog was not secured. Another company cancelled the order, and the window had to be rebuilt. The Complainant's window was replaced on September 14, 2022, approximately five and one-half months after requesting a replacement. Respondents state another tenant had to wait eight (8) months for a window repair, but they have since switched to a new company that has lowered the turn-around time.

Proof of purchase of new smoke detectors was provided by Respondents. Respondents state they became aware of the issue after the Complainant called codes, and the smoke detectors were replaced the next day.

The investigation inquired into other tenants being banned from the property. Respondent testimony states that in general, if a tenant is evicted, there are banned from returning. A list of six (6) tenants who were banned from the property, in addition to the Complainant, was provided. Most were due to altercations or assaults between residents and staff. Respondent testimony states that the Complainant was banned from the property due to her breaking into a vacant unit after eviction and because the police were called when it was discovered the Complainant was sleeping in her car on the property with her dogs barking all night.

### Eviction

*To establish that the Respondents initiated eviction proceedings against the Complainant based on Complainant's disability, the investigation must show the following:*

1. The Complainant is a member of a protected class;
2. The Complainant met the minimum standards to live in the Respondent's housing;
3. The Respondents evicted or initiated eviction proceedings against the Complainant; and
4. Similarly situated tenants not members of Complainant's protected class were not subjected to such eviction proceedings.

The Complainant provided documentation showing she receives Social Security Disability Income. Disability is a protected class under the Acts. A copy of the Complainant's lease dated February 20, 2020, was provided. A notice dated August 9, 2022, was provided to the Complainant stating she had thirty (30) days to cure her nonpayment or face eviction. The first three elements are met.

In this case, a similarly situated tenant would be a tenant who was behind on rent. To establish this element, the investigation would have to show a non-disabled tenant who was equally or more behind on rent was not evicted. The investigation inquired into other

Page 3 of 6

Case 3:24-cv-01111    Document 1-1    Filed 09/13/24    Page 14 of 17 PageID #: 19

evictions given during the investigative time frame. Thirty-seven (37) tenants were sent for eviction in 2022. Amounts owed at the time of eviction range from $1,286.00 to $6,669.25. Respondents do not log disability status for tenants.

Respondent's legitimate non-discriminatory reason for the eviction being issued to the Complainant nonpayment of rent. Evidence gathered during the investigation supported the Respondent's reason for the notice. Complainant owed $3,037.60 at the time eviction was filed. Other tenants who owed greater and lesser rental arrears were also sent for eviction.

The investigation did not find sufficient evidence to suggest that the Respondents initiated eviction proceedings against the Complainant due to her disability. Rather, the investigation found sufficient evidence that the Respondents initiated eviction proceedings against the Complainant for nonpayment of rent. The investigation found insufficient evidence to show that the Respondents provided non-disabled tenants with more favorable treatment in regard to eviction proceedings.

### Terms and Conditions

*To establish that Respondents treated Complainant differently because of her disability, the Complaint must show the following:*

1. Complainant is a member of a protected class;
2. Complainant lived in the property and met the minimum qualifications for rental;
3. Respondent imposed certain terms and conditions on the Complainant; and
4. Respondent provided more favorable terms or conditions to other persons outside of Complainant's protected class(es).

As stated above, the first two elements are met.

### Maintenance Issues

The Complainant alleged that the Respondents delayed the repair of her window and smoke alarms due to her disability. Evidence did not support these allegations. As previously stated, the investigation found that the Complainant first reported her window was broken on or about March 31, 2022, and that it was not repaired until September 15, 2022. As such the third element is met. The Respondent submitted documents showing attempts to order and repair the window. Evidence indicated that upon learning of the issue with smoke detectors, they were promptly replaced. Other maintenance requests at the property were reviewed. No official work orders for window replacements were shown, but Respondent testimony states that another tenant waited eight (8) months for a window replacement. Other tenants who requested smoke detector replacement had them replaced within one (1) day.

The investigation found insufficient evidence to show that the Respondents provided non-disabled tenants with more favorable treatment in regard to maintenance issues.

**Acceptance of Partial Payment**

The Complainant alleged that the Respondents would not accept her August 5, 2022, partial rental payment. Evidence provided by Respondents shows the tenant was turned over for eviction on August 5, 2022. Respondent testimony indicated that after a tenant is turned over for eviction, partial payments are not accepted. A document provided by Respondents from the Law Office of Hall and Associates dated September 7, 2022, stated that the office had received the Complainant's August 5, 2022, payments, and that they were being held due to the ongoing eviction.

The investigation found insufficient evidence to show that the Respondents provided non-disabled tenants with more favorable treatment in regard to the acceptance of partial rental payments.

<u>**Retaliation**</u>

*To establish that Respondents retaliated against Complainant for engaging in a protected activity, Complainant must show the following:*

1. Complainant engaged in protected activity;
2. Respondent took some adverse action against Complainant, i.e., coerced, intimidated, threatened, or interfered with Complainant's exercise or enjoyment of dwelling; and
3. There is a causal connection between the two events.

The Investigation found that on January 17, 2023, the Complainant sent an e-mail to Respondents where she stated the following "A federal HUD complaint has been filed as office personnel at Greentree Pointe continue to discriminate against my person." Filing a complaint under the Acts is considered a protected activity. The first element is met.

The Complainant states in the email that she learned that she was banned from the property from other tenants but was never notified via Respondents. The second element is met.

To establish a causal connection, evidence must show that the adverse action was due to the Complainant's engagement in a protected activity. The timeline shows that the Complainant notified Respondents of her filing of a HUD complaint on January 17, 2023, and in the same email, she mentions she was aware she was banned. This implies that the Complainant was banned from the property prior to notifying Respondents that a HUD complaint had been filed. Additionally, Respondent testimony states that all evicted tenants are not allowed on the property, and that the Complainant was found breaking into vacant units and sleeping in her car on the property after eviction. A causal connection cannot be found, and the allegation fails on the third element.

V. ADDITIONAL INFORMATION

Notwithstanding this determination by the Tennessee Human Rights Commission, the Fair Housing Act provides that the complainant may file a civil action in an appropriate federal district court or state court within two years after the occurrence or termination of the alleged discriminatory housing practice. The computation of this two-year period does not include the time during which this administrative proceeding was pending. In addition, upon the application of either party to such civil action, the court may appoint an attorney, or may authorize the commencement of or continuation of the civil action without the payment of fees, costs, or security, if the court determines that such party is financially unable to bear the costs of the lawsuit.

The Department of Housing and Urban Development's regulations implementing the Act require that a dismissal, if any, be publicly disclosed, unless the respondent requests that no such release be made. Such request must be made by the respondent within thirty (30) days of receipt of the determination to the Tennessee Human Rights Commission at the address contained in the enclosed summary. Notwithstanding such request by the respondent, the fact of a dismissal, including the names of all parties, is public information and is available upon request.

Notwithstanding this determination by THRC, under the Tennessee Human Rights Act, within 30 days of the receipt of the Notice of Determination, the Complainant may file a written request for reconsideration with the Commission or a private action in state court (Chancery or Circuit) appealing this decision.

_____  08/09/2024
Muriel M. Nolen, Executive Director  Date


A copy of the final investigative report can be obtained from:

Tennessee Human Rights Commission
ATTN: FIR Request
William R. Snodgrass Tennessee Tower
312 Rosa L. Parks Avenue, 23rd Floor
Nashville, TN 37243-1102
FAX: 615-253-1886