UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KAREN DEMOOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:24-cv-01111 |
| v. | ) | |
| | ) | Judge Trauger |
| FREEMAN WEBB COMPANY, | ) | Magistrate Judge Newbern |
| REALTORS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

The plaintiff, Karen DeMoor, a resident of Lebanon, Tennessee, brings this pro se action against the defendants, Freeman Webb Company, Realtors, Brook Gipson, Bret Harris, and Judith Beasley, alleging violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3602; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12133; and her civil rights. (Doc. No. 1).

Pending before the court is the plaintiff's Amended Application for Leave to Proceed In Forma Pauperis ("Amended IFP Application") (Doc. No. 8). The plaintiff's Amended IFP Application (Doc. No. 8) will be granted, and the complaint is before the court for initial review.

### I. FILING FEE

The court may authorize a person to file a civil suit without paying the filing fee. 28 U.S.C. § 1915(a). Section 1915 is intended to insure that indigent persons have equal access to the judicial system by allowing them to proceed without having to advance the fees and costs associated with litigation. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989); *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948). Pauper status does not require absolute destitution. *Adkins*, 335 U.S. at 339; *Foster v. Cuyahoga Dep't of Health and Human Servs.*, 21 F. App'x 239, 240 (6th Cir. 2001). Rather, the relevant question is "whether the court costs can be paid without undue

1

hardship." *Foster*, 21 F. App'x at 240. Proceeding in forma pauperis is a privilege, not a right, and "[t]he decision whether to permit a litigant to proceed [in forma pauperis] is within the Court's discretion." *Id*.

The plaintiff reports a monthly income of $1,383.00 from disability payments and public-assistance. (Doc. No. 8 at PageID# 31-32). The plaintiff reports having no cash and having only $24.00 between her checking and savings accounts. (*Id*. at PageID# 42). The plaintiff reports monthly expenses totaling $1,167.00. (*Id*. at PageID# 44-45). Because the plaintiff's Amended IFP Application reflects that she lacks sufficient financial resources to pay the full filing fee without undue hardship, the Amended IFP Application (Doc. No. 8) is **GRANTED**. The Clerk therefore is **DIRECTED** to file the complaint in forma pauperis. 28 U.S.C. § 1915(a).

Even though the plaintiff has been granted pauper status, she is not exempt from other fees and costs in this action. Costs may include postage, copying fees, witness fees, and deposition and transcript costs. More information about proceeding in forma pauperis can be found on the court's website and in the court's Information Sheet entitled "In Forma Pauperis (IFP) Status for Nonprisoners" which is available from the Clerk's Office upon request at no cost.

## II. INITIAL REVIEW[1]

A. <u>LEGAL STANDARD</u>

The court must conduct an initial review and dismiss the complaint if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against

---

[1] In her complaint, the plaintiff directs the court to the statement of facts written in an email in her "HUD complaint, attached as Exhibit B." (Doc. No. 1 at PageID# 4). Within the same attachment to the complaint is the plaintiff's "Exhibit C," which is a Notice of Determination letter issued by the Tennessee Human Rights Commission ("THRC"). (Doc. No. 1-1 at PageID# 14-22). The court will consider both exhibits when screening the complaint.

a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e)."). To avoid dismissal for failure to state a claim, the complaint must contain sufficient factual allegations to render a right to relief "plausible on its face," *Small v. Brock*, 963 F.3d 539, 540 (6th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). In making the plausibility determination, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Mich.*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The court must also afford the pro se pleading a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, 87 F.4th at 749.

## B. ALLEGED FACTS

On March 31, 2022, the living room window in the plaintiff's townhome "fell inward crashed to the floor and shattered." (Doc. No. 1-1 at PageID# 12). The plaintiff took photos of the window and left a voicemail with emergency maintenance and then emailed the complex office manager and defendant, Brook Gipson. (*Id*.). Over the six months following this incident, the plaintiff continued to email Brook Gipson who would periodically email the plaintiff back about her window being fixed. (*Id*.). Around June or July of 2022, someone attempted to break into the plaintiff's townhome through the broken window that had been remedied with only a cardboard

insert. (*Id*.). A neighbor witnessed this incident and reported it to the police. (*Id*.). The plaintiff says she also notified police, but no urgent action was taken by management. (*Id*.).

In July of 2022, a smoke alarm sounded in the plaintiff's townhome, and she called the fire department. (*Id*.). The fire department found a "burnt and frayed wire," took a photo of it, and told the plaintiff to keep it disconnected and call maintenance for it to be repaired. (*Id*.). Maintenance reconnected the smoke detector for the plaintiff. (*Id*.). The plaintiff did not feel confident with how maintenance handled the repair, so she disconnected the smoke detector based on the fire department's suggestion that it stay disconnected. (*Id*.).

The plaintiff filed a complaint with Lebanon Housing Codes[2]. (*Id*.). Shortly after, on September 15, 2022, Lebanon Housing Codes came to her home, viewed the broken window, and determined three of the five smoke detectors in the plaintiff's townhome were inoperable. (*Id*.). Lebanon Housing Codes gave the office manager 30 days to start the necessary repairs. (*Id*.). The plaintiff received a new living room window and five brand new smoke detectors within 24 hours. (*Id*.).

The plaintiff states that tenants are normally given a 5-day grace period to pay rent at the beginning of each month. (*Id*.). On August 5, 2022, the plaintiff placed her money orders in the office outbox to pay her rent. (*Id*.). According to the plaintiff, the office manager did not report or add her payment to the rent ledger. (*Id*.). The Property Management Group out of Nashville then had their attorney write a letter to the plaintiff regarding her rent, followed by a detainer warrant for late rent. (*Id*.). The plaintiff concedes that she owed a "small amount" in addition to her rent due in August but says it was "not enough to instigate a detainer warrant." (*Id*.).

---

[2] In the attachment to the complaint, this organization is referred to as "Lebanon Housing Codes," "Lebanon Housing Authority," and "codes." (Doc. No. 1-1 at PageID# 12, 17).

On September 7, 2022, the plaintiff received a letter from the Property Management Group saying they were in possession of the plaintiff's money orders for rent from August 5, 2022. (*Id*.). The parties had court on September 8, 2022, and the office manager stated she had the plaintiff's money orders that were dated August 5, 2022. (*Id*.). The plaintiff fought the eviction legal process until December of 2022. (*Id*.). The plaintiff claims the judge that presided over her case in the General Sessions Court "strongly recommended that [she] move this to civil court based on discrimination." (*Id*.). The plaintiff was evicted on December 2, 2022. (*Id*.).

The office manager and the sheriff were present in the plaintiff's yard while she was moving out of the townhome. (*Id*.). The plaintiff asked the office manager to leave the property until she finished moving out, and the office manager declined to do so. (*Id*.). The plaintiff also alleges that the office manager and the assistant manager have confronted and intimidated the plaintiff's friends who live at the same complex. (*Id*. at PageID# 13). The plaintiff alleges that her friends were told they will be in trouble if they contact her and that the plaintiff is banned from the property. (*Id*.). The plaintiff alleges that, on or around January 23, 2023, other residents informed her that she was "banned" from the property. (Doc. No. 1-1 at PageID# 18). Other previously-evicted residents, according to the plaintiff, had not been banned from the property. (*Id*.).

The plaintiff reports that she is on Social Security Disability. (*Id*.). The plaintiff states other tenants had their windows replaced within two to three weeks, and another tenant that was evicted was not banned. (*Id*.). The plaintiff believes she was discriminated against. (*Id*.).

C. ANALYSIS

*1. Defendant Judith Beasley*

The complaint fails to state a claim upon which relief may be granted as to the defendant Judith Beasley. (Doc. No. 1; Doc. No. 1-1 at PageID# 11-22). The plaintiff names Judith Beasley

as "Respondents Representative," but she provides no further context or mention of this defendant within the rest of her complaint or the attachment thereto, and she fails to connect any allegations to this defendant. (*Id*.). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Because the plaintiff fails to assert factual allegations against the defendant Judith Beasley sufficient to render a right to relief "plausible on its face," *Small*, 963 F.3d at 540 (quoting *Iqbal*, 556 U.S. at 678), Judith Beasley will be dismissed as a defendant in this case.

### 2. Defendants Freeman Webb Company, Realtors; Brook Gipson; and Bret Harris

#### a. The Americans with Disabilities Act and 42 U.S.C. § 1983 Civil Rights Claims

In Tennessee, claims under 42 U.S.C. § 1983 for civil rights violations and claims under the Americans with Disabilities Act ("ADA") are subject to a one-year statute of limitations found in Tenn. Code Ann. § 28-3-104(a)(3). *See, e.g., Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005) (applying Tenn. Code Ann. § 28-3-104(a)(3) to § 1983 action); *Collier v. Austin Peay*

6

*State Univ.*, 616 F. Supp. 2d 760, 771 (M.D. Tenn. 2009) (applying one-year statute of limitations to ADA claims).

The plaintiff alleges that the defendants' wrongful acts occurred between March 31, 2022, at the earliest, and January 23, 2023. The plaintiff filed this lawsuit on September 13, 2024, more than one year after the latest alleged wrongful act. (Doc. No. 1). The plaintiff's claims under the ADA and § 1983 are plainly barred by the one-year statute of limitations. *Accord Lewis v. Fayette Cty. Det. Ctr.*, 211 F.3d 1269 (6th Cir. 2000) (dismissing ADA claims as time-barred under Kentucky's one-year statute of limitations for personal injury claims); *Burton v. City of Memphis*, No. 2:13-cv-02070-JDT-cgc, 2014 WL 5798519, at *4 (W.D. Tenn. Nov. 7, 2014), report and recommendation adopted, No. 13-2070-JDT-CGC, 2014 WL 6686779 (W.D. Tenn. Nov. 26, 2014) (applying Tenn. Code Ann. § 28-3-104(a)(3) to hold that ADA claim was time-barred); *Cherrion Pollard Pointer v. Corrs. Corp. of America*, No. 12-1292, 2013 WL 4505697, at *1 (W.D. Tenn. Aug. 22, 2013) (same); *Miller v. City of Knoxville*, No. 3:03-CV-574, 2006 WL 2506229, at *3 (E.D. Tenn. Aug. 29, 2006) (dismissing ADA claims as time-barred by Tenn. Code Ann. § 28-3-104(a)(3)).

The plaintiff's claims as to the Americans with Disabilities Act and 42 U.S.C. § 1983 will therefore be dismissed with prejudice.

      b. The Fair Housing Act[3]

---

[3] The plaintiff's Exhibit C, the Notice of Determination letter from the THRC, lists the Lebanon Housing Authority as managed by the defendant Freeman Webb Company, Realtors, and lists Bret Harris as the Regional Vice President. (Doc. No. 1-1 at PageID# 17). Although the plaintiff fails to explain the relationship between those defendants and the facts at issue, the THRC letter provides context for the court.

"An aggrieved person" may file a civil action to seek redress against discrimination in the rental or sale of housing under the Fair Housing Act ("FHA"). 42 U.S.C. § 3613(a)(1)(A); 42 U.S.C. § 3604(a). Under the FHA, it is unlawful for a housing provider to refuse to make a reasonable accommodation in rules, policies, practices or services, when the accommodation is necessary to afford a person with a disability the equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B). "An FHA plaintiff need only allege a 'distinct and palpable injury' caused by a defendant's discriminatory actions." *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 544 (6th Cir. 2014) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982)); *Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 576 (6th Cir. 2013). Additionally, under 42 U.S.C. § 3617, the FHA's anti-interference provision, it is unlawful for a housing provider to "coerce, intimidate, threaten, or interfere" with the exercise or enjoyment of rights protected under the FHA.

A plaintiff asserting an FHA claim must allege: (1) that she suffers from a disability, (2) that she requested an accommodation necessary to afford her an equal opportunity to use and enjoy a dwelling, (3) that the requested accommodation was reasonable, (4) that the defendant housing provider refused to make the accommodation, and (5) that the defendant knew or should have known of the disability at the time of the refusal. *Hollis*, 760 F.3d at 541; *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011).

Here, the plaintiff's allegations do not state a viable discrimination claim under the FHA. The plaintiff alleges that she is disabled. (Doc. No. 1-1 at PageID# 13). The plaintiff does not, however, allege that she requested a reasonable accommodation related to her disability. (*See* Doc. No. 1-1). Her allegations are insufficient to state a plausible claim for FHA disability discrimination. *Hollis*, 760 F.3d at 541; *Overlook*, 415 F. App'x at 621.

A plaintiff alleging an FHA interference claim must allege that she: (1) exercised or enjoyed a right guaranteed by the FHA; (2) the defendant's intentional conduct constituted coercion, intimidation, threat, or interference; and (3) a causal connection exists between exercise or enjoyment of the right and the defendant's conduct. *Hood v. Midwest Sav. Bank*, 95 Fed. App'x 768, 779 (6th Cir. 2004); *Grier v. Bryden Mgmt., LLC*, No. 2:17-cv-111, 2019 WL 1046083, at *6 (S.D. Ohio Mar. 5, 2019) (threat of eviction).

The plaintiff does not allege that she exercised the right, guaranteed by the FHA, to request a reasonable accommodation in the use and enjoyment of her apartment. The plaintiff alleges that she requested a broken window and smoke detectors be fixed, and that the remedy of both took an undesirable amount of time. (Doc. No. 1-1 at PageID# 12). Moreover, the plaintiff alleges she was discriminated against by being evicted, but the plaintiff does not allege that these actions were taken by the defendants in response to her requesting any reasonable accommodation based on her disability. (*See* Doc. No. 1-1). These allegations fail to state a plausible claim for FHA interference. *Hood*, 95 Fed. App'x at 779; *Grier*, 2019 WL 1046083, at *6.

Consequently, the plaintiff's claims as to the Fair Housing Act will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### III. CONCLUSION

Having conducted the screening of the complaint required by 28 U.S.C. § 1915(e)(2)(B), the court finds that Judith Beasley is **DISMISSED** as a defendant in this case.

Further, the plaintiff's claims against Defendants Freeman Webb Company, Relators, Brook Gipson, and Bret Harris under the Americans with Disabilities Act and 42 U.S.C. § 1983 fail to state colorable claims. Those claims therefore are **DISMISSED WITH PREJUDICE**.

Likewise, the complaint also fails to state colorable claims against Defendants Freeman

Webb Company, Realtors, Brook Gipson, and Bret Harris for violations of the Fair Housing Act.

The complaint is therefore **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**.

Aleta A. Trauger
United States District Judge